IN THE MATTER OF CLARENCE THOMAS BELUE, AN ATTORNEY AND COUNSELOR AT LAW, RESPONDENT.

No. 86-340.
Decided June 21, 1988.
766 P.2d 206.

## OPINION AND ORDER

The Commission on Practice of the Supreme Court of the State of Montana filed a complaint in this Court charging Clarence Thomas Belue with various violations of the Rules of Professional Ethics which apply to attorneys licensed to practice in the State of Montana. On July 21, 1986, a citation was issued to Mr. Belue. In accordance with that citation, the Answer of Mr. Belue was filed in this Court on September 18, 1986. Ultimately a two and one-half day

hearing was held before the Commission on Practice, commencing on September 21, 1987, at which a quorum of the members of the Commission were present. Robert C. Smith acted as special counsel. Mr. Belue was personally present and was represented by Gregory O. Morgan. Evidence was presented by Mr. Smith on behalf of the prosecution and by Mr. Morgan on behalf of Mr. Belue. Subsequently the Commission on Practice issued its findings, conclusions, and recommendations dated January 21, 1988, which were filed in this Court on January 27, 1988. The Commission on Practice recommended that Mr. Belue be suspended from the practice of law for three months, that Mr. Belue be publicly censured, and that Mr. Belue pay all costs of the proceedings before the Commission on Practice as a condition precedent to reinstatement to the practice of law. A copy of the report was served upon Mr. Belue and his counsel and also upon Mr. Smith as special counsel. The findings and recommendations of the Commission are detailed and lengthy and may be examined by interested parties in the office of the Clerk of the Supreme Court.

On March 31, 1988, the Crow Indian Tribe filed an amicus curiae brief in this Court. On April 4, 1988, the brief of Mr. Belue containing his objections to the Commission on Practice findings and conclusions was filed in this Court. On May 9, 1988, the special counsel filed his reply to Mr. Belue's objections and his response to the amicus curiae brief. In accordance with the rules governing the Commission on Practice, the matter was deemed submitted to the Supreme Court. The Court has reviewed the briefs and other matters in the file and the extensive transcript and has concluded that oral argument is not required.

The Court has concluded that it is appropriate to impose the discipline upon Mr. Belue as recommended by the Commission on Practice. Because of the extensive arguments on the part of Mr. Belue suggesting his profound disagreement with the conclusions of the Commission on Practice, and because of the contentions on the part of the amicus curiae Crow Indian Tribe, the Court will review a number of the significant findings and conclusions of the Commission.

Mr. Belue has been licensed to practice law in Montana as an attorney and counselor since June 1969. He has engaged in the general practice of law in Hardin, Montana. During his practice he has held the positions of Big Horn County Attorney, City Attorney of Har-

din, Deputy County Attorney, United States Magistrate, and Northern Cheyenne Tribal Trial Judge.

The Commission on Practice made Findings of Fact 2 through 19 in connection with Counts I, III, and IV. We will first review these common findings of fact. All three of these Counts arose out of events occurring in the action described as *National Farmers Union Insurance Companies (NFU), et al. v. Crow Tribe of Indians, et al.,* Civil Cause No. CV 82-230-BLG, in the United States District Court for the District of Montana, Billings Division, in which Mr. Belue acted as an attorney on behalf of Leroy Sage, a minor, and Flora Not Afraid, Sage's guardian. In the course of that proceeding, Mr. Belue filed a motion for disciplinary action against attorneys Ramirez, Harris and Hartman on the grounds they had given Judge Roundface something of value for the purpose of improperly influencing his decision. Mr. Belue requested the District Court to impose sanctions of disbarment, suspension, reprimand, or such other disciplinary action as it deemed proper. The findings point out that depositions were taken and a hearing was held before U.S. District Judge Paul G. Hatfield, who entered a Memorandum and Order which stated in pertinent part:

"When put to the task with regard to the factual support for the accusations he has advanced, however, Mr. Belue has presented nothing more than his inquisitional interpretation of otherwise innocuous events. The evangelical fervor with which Mr. Belue has obviously approached his defense in the principal action obscured his objective judgment with respect to the contempt proceedings against him. Acting solely in retaliation, Mr. Belue assailed the character of these attorneys. This court will not condone this type of behavior by the attorneys appearing before it. I find there is nothing in the record to suggest that Messrs. Hartman, Ramirez, and Harris conducted themselves in anything but an exemplary manner at all pertinent times.

"Our adversary system of jurisprudence inevitably generates those situations which in ordinary parlance may prompt a rash response. That same response by an attorney admitted to the bar of this court in a proceeding before the court can hardly be justified under any circumstances. Regardless of the intensity with which an attorney assumes his adversary posture, he is expected, as a trained professional, to conduct himself in an ethical manner. On the basis of the record before me, I am compelled to conclude that Mr. Belue has

not conducted himself in a manner which behooves his status as a member of the bar of this court."

The findings further point out that Judge Hatfield requested the Commission on Practice to assist him in an advisory capacity. By subsequent orders, Judge Hatfield imposed Rule 11 sanctions upon Mr. Belue for the filing of unfounded ethical charges. Mr. Belue remitted payment of $5,601.97 to the Clerk of the U.S. District Court to cover opposing counsel's costs and attorneys' fees in defense of the charges raised by Mr. Belue's motion.

The Commission on Practice in Finding No. 19 stated the following conclusion:

"Based upon the evidence submitted herein, we agree with Judge Hatfield's findings regarding Belue's contempt and the unfounded and frivolous nature of Mr. Belue's motion against opposing counsel. There is no evidence to show or even reasonably suggest that Hartman, Ramirez, or Harris made any attempt or even considered, either individually, jointly, or in concert with others, bribing Judge Roundface or otherwise offering him something of value in order to improperly influence his decision-making process."

We conclude there is clear and convincing evidence to support Findings 2 through 19 of the Commission on Practice.

We will now consider the Findings and Conclusions of the Commission on Practice with regard to each of the Counts filed against Mr. Belue before the Commission:

*Count I* — Filing Frivolous and Unfounded Ethical Violations Claims Against Opposing Counsel. The Commission found that the series of events outlined by Mr. Belue did not constitute a rational basis, objectively or subjectively, for coming to the conclusion that opposing counsel had offered Judge Roundface a bribe or committed any ethical violations. The Commission further found that the evidence was clear and convincing that the charges against opposing counsel were unfounded, and that Mr. Belue's actions merely served to injure opposing counsel in retaliation for a contempt citation pending against him. Rule 3.1 of the Rules of Professional Conduct provides:

"Meritorious Claims and Contentions. A lawyer shall not bring or defend a proceeding, or assert or controvert an issue therein, unless there is a basis for doing so that is not frivolous, which includes a good faith argument for an extension, modification, or reversal of existing law."

The Commission concluded that Mr. Belue's conduct in relation to

Count I violated the provisions of Rule 3.1. We affirm the Findings and Conclusions of the Commission as to Count I.

*Count II* — Failure to Return Government Property. The Commission concluded there was a failure to prove this Count by clear and convincing evidence. The Commission dismissed Count II. We affirm the dismissal of Count II.

*Count III* — Disobedience of Judge Battin's Order of December 10, 1984. The Commission found that Mr. Belue obtained from the Tribal Court a Writ of Execution against the Lodge Grass Schools which was executed by seizure of various school property including computer systems and computer related equipment. The Commission concluded from the evidence that it was clear Mr. Belue intentionally disregarded Federal District Judge Battin's Order to release the property from attachment, and that he sought to evade the Order by obtaining an order from Judge Roundface of the Tribal Court. In its Conclusions the Commission referred to Rule 8.4(d) which provides that it is professional misconduct for a lawyer to "engage in conduct that is prejudicial to the administration of justice." The Commission also referred to Section 37-61-301(2)(b), MCA, which in substance provides that an attorney may be suspended for violation of an order of the court requiring him to do or forbear an act. The Commission concluded that Mr. Belue's conduct in this matter violated the Rules of Professional Conduct and statutory prohibitions against disobedience of a court order. We affirm both the Findings and Conclusions of the Commission as to Count III.

*Count IV* — Attempting to Obstruct Justice by Urging a Witness, Judge Roundface, Not to Testify at his Deposition. The Commission made extensive findings of which the following is pertinent:

"It is clear from the record that Mr. Belue's intention in making such objections was to prevent counsel for attorneys Harris, Hartman and Ramirez from ascertaining Judge Roundface's testimony regarding the alleged bribe and, indeed, that Belue did not want the testimony known, because it was contrary to his charges against the opposing counsel. Judge Roundface was not Belue's client or otherwise related by employment or agency with Belue, and Judge Roundface may have been subject to sanctions by the District Court after Judge Battin had allowed his deposition to go forward for the specific purpose of inquiring into the question of a bribe. As a result, Mr. Belue had no privilege to object or otherwise instruct Judge Roundface not to respond to the questions propounded."

Commission referred to Rule 3.4 of the Rules of Professional Conduct and its provisions with regard to fairness to opposing party and counsel. The Commission concluded that Mr. Belue's objections and advice to Judge Roundface as a witness at his deposition were obstructive tactics intended for the purpose of improperly impeding the discovery process and violated the foregoing Rule. The Commission further concluded that Mr. Belue's conduct in advising Judge Roundface was a blatant attempt to frustrate the administration of justice. The Commission found that the evidence was clear and convincing with respect to Count IV and concluded that such conduct violated Rules 3.4(a), (d), and (f), and Rule 8.4(d) of the Rules of Professional Conduct. We affirm the Findings and Conclusions of the Commission with regard to Count IV.

*Count V* — Physical Assault on Another. The Commission found that on May 25, 1982, Mr. Belue was prosecuting a DUI charge as City Attorney, and attorney Lance Pedersen was defending the accused in Justice Court for Big Horn County. The Commission set forth in some detail the nature of the assault by Mr. Belue on Mr. Pedersen. The Commission found there was no purpose to be served by Mr. Belue's actions other than to intimidate or embarrass Mr. Pedersen by physically attacking him, and such action reflected adversely on his fitness as a lawyer. The Commission also found that the actions occurred immediately outside the courtroom in the course and conduct of a trial, before witnesses, jurors, and others.

The Commission concluded that Mr. Belue's conduct toward attorney Pedersen violated Rules 4.4 and 8.4 of the Rules of Professional Conduct. We affirm the Findings and Conclusions of the Commission with regard to Count V.

*Count VI* — Outrageous, Undignified, and Discourteous Conduct. The Commission considered evidence with regard to intimidating, threatening, arguing and quarreling with various individuals, publicly and privately, in eight separate incidents involving seven different individuals extending over a period from 1981 to 1985. The Commission found that each of the incidents was an example of unacceptable behavior on the part of an attorney and that Mr. Belue's behavior did not serve a substantial purpose other than to embarrass, threaten, intimidate, challenge, or otherwise burden the parties involved. Mr. Belue had testified that he realized he had a problem and expressed his apologies. The Commission found that while Mr. Belue had apologized, he did not seem to be aware that there was any admission of guilt warranting discipline. The Commission found

that Mr. Belue's conduct could not be condoned and that zealous representation of various clients' interests did not justify the manner in which Mr. Belue behaved.

The Commission concluded that there was clear and convincing evidence to show that Mr. Belue's conduct violated Rules 8.4(d) and 4.4 of the Rules of Professional Conduct. The Commission referred to the official comments under Rule 8.4(d) as follows:

"Offenses involving violence, dishonesty, or breach of trust, or serious interference with the administration of justice are in that category. A pattern of repeated offenses, even ones of minor significance when considered separately, can indicate an indifference to legal obligations."

The Commission also referred to this Court's advisory opinion, *In Re Advisory Opinion to Commission on Practice* (1971), 156 Mont. 514, 495 P.2d 1128, 1129. The Commission concluded that while each of the incidents may not be serious when taken separately, Mr. Belue's conduct taken as a whole is serious and that it was clear that Mr. Belue had engaged in a pattern of conduct which adversely reflected upon his fitness to practice law. We affirm the Findings and Conclusion on Count VI.

*Count VII* — Intimidation and Threats to a Public Official. The Commission found that on or about February 23, 1984, Harvey Dalton was a night shift commander with the Big Horn County Sheriff's office when a complaint was made with regard to wrongful occupation of a house by a client of Mr. Belue. Mr. Dalton called Mr. Belue. Mr. Belue responded to the inquiry by Deputy Dalton in a caustic and argumentative manner, interrupting Dalton's inquiries, and concluded his conversation by threatening to get a gun and shoot Deputy Dalton if he should go down to the subject property to follow up on the matter. The Commission concluded there was clear and convincing evidence to show that Mr. Belue's comments, remarks, and threats violated the provisions of Rule 8.4(b) and (d), as well as Rule 4.4 of the Rules of Professional Conduct and that his actions served no purpose other than to unduly burden and harass Deputy Dalton and intimidate him from carrying out his investigation. We affirm the Findings and Conclusion of the Commission on Count VII.

*Count VIII* — Contacting a Prospective Client for Private Representation on a Matter Investigated by the County Attorney's Office. The Commission's decision included the following findings. In 1985 a ten-year-old girl was hurt in a BB gun shooting accident which

resulted in an investigation by the Big Horn County Sheriff's Department. The BB gun involved was taken as evidence by the sheriff's department. It was Mr. Belue's duty as County Attorney to decide whether or not to file a criminal prosecution. Mr. Belue was out of town at the time of the shooting incident, but, upon his return, he immediately became interested in the possibilities of a civil suit. He learned that the mother of the injured girl was employed in the county courthouse, and he called the mother and asked her to come and see him. When she advised she was busy and could not come to his private office, Mr. Belue asked her to see him at his office in the county courthouse. Later in the day Mr. Belue again called the mother to advise that he was in his office in the county courthouse and he wanted her to come and see him regarding a personal matter. The mother complied with that request and, at Mr. Belue's office, was advised by him that he had heard of her daughter's accident. He then offered to represent her in a lawsuit on the case. Mr. Belue indicated that he could obtain a substantial award. The mother testified that she was shocked by the proposition and advised Mr. Belue that if she needed an attorney she would get one of her own choosing and then left the office. Mr. Belue's office in fact was involved in the investigation, and it was he who actually made the decision to terminate further criminal investigation.

The Commission found that it was clear that Mr. Belue was soliciting representation of the mother on a matter in which he and his office were directly involved as County Attorney. The Commission concluded there was clear and convincing evidence to show that Mr. Belue attempted to gain employment as an attorney to represent the mother on a private matter while he was directly involved in the same matter as a public officer, the County Attorney of Big Horn County, in violation of Rule 1.11(c) of the Rules of Professional Conduct, which provides:

"Except as law may otherwise expressly permit, a lawyer serving as a public officer or employee shall not:

". . .

"(2) negotiate for private employment with any person who is involved as a party or as attorney for a party in a matter in which the lawyer is participating personally and substantially."

We affirm the Findings and Conclusion of the Commission with regard to Count VIII.

*Count IX* — Conflict of Interest as Big Horn County Attorney. The Commission found that in 1984 Mr. Belue represented a church

in an issue as to its tax exempt status. The church's tax exempt status was recognized by a district court decision dated February 19, 1985. Subsequent to that decision Mr. Belue wrote the Big Horn County Treasurer and demanded a refund of taxes paid by the church. The treasurer did not believe a refund was appropriate and requested a letter opinion from Mr. Belue as Big Horn County Attorney. In the absence of a response from the County Attorney, the treasurer requested an opinion from the Attorney General's office. By letter dated August 8, 1985, the Attorney General's office issued a directive letter advising Mr. Belue that he should immediately remove himself from representation of the County of Big Horn and its officers in connection with this matter. The Attorney General, pointing out the ethical violations involved in such conflicts, directed that Mr. Belue cease representing private clients in actions against the county. At a meeting of the Big Horn County Commissioners in August 1985, Mr. Belue advised the commissioners that he was not going to obey the Attorney General's letter with regard to his not representing private clients.

The Commission found that involvement by Mr. Belue as County Attorney was inappropriate in light of the Attorney General's advice and the Rules of Professional Conduct and that the conflict was apparent on its face. The Commission therefore concluded that Mr. Belue's conduct relative to Count IX violated the Rules of Professional Conduct as they relate to conflicts of interest. The Commission's conclusions set forth Rule 1.7 of the Rules of Professional Conduct and concluded that Mr. Belue's demands on behalf of the church were adverse to the county's interests and that he had no authority or consent from his client, the County Treasurer, to participate in the matter. He also had the express directive from the Attorney General advising him to abstain from involvement. We affirm the Findings and Conclusions of the Commission with regard to Count IX.

*Count X* — Frivolous Claims. Special counsel moved for dismissal of Count X at the outset of the hearing and the count was dismissed by the Commission. We affirm the dismissal of Count X.

*Count XI* — Contacting Adverse Party Represented by Counsel. The Commission found that in 1984 Mr. Belue initially represented a husband in a divorce proceeding, having received a $100 retainer fee. Mr. Belue then accepted a $500 retainer fee to represent the wife in the same divorce proceeding. Mr. Belue's secretary advised the husband that Mr. Belue was representing the wife and no longer

represented the husband. By his own testimony Mr. Belue admitted that he had been retained by the husband, but that he later agreed to and did represent the wife. The Commission found that Mr. Belue had a conflict prohibited by the Rules of Professional Conduct. The Commission concluded that Mr. Belue's representation of the wife after representing the husband violated the provisions of Rule 1.9 which provides as follows:

"A lawyer who has formerly represented a client in a matter shall not thereafter:

"(a) represent another person in the same or substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client consents after consultation."

The Commission further concluded that there was not sufficient evidence to find Mr. Belue to be in violation of Rules 4.2 or 7.3(d) in regard to this matter. We affirm the Findings and Conclusions on the part of the Commission with regard to Count XI.

*Count XII* — False Testimony and Conduct Prejudicial to the Administration of Justice. The Commission concluded that the allegations were barred by principles of limitations and laches and therefore dismissed Count XII. We affirm the conclusion of dismissal of the Commission with regard to Count XII.

*Count XIII* — Continued Pattern of Misconduct. The Commission found that the various counts previously discussed represented a continuing pattern of misconduct on the part of Mr. Belue and a repeated and continuous disregard for the law, the Rules of Professional Conduct, and Mr. Belue's obligations as County Attorney. The Commission concluded that Mr. Belue's conduct violated Rule 8.4 of the Rules of Professional Conduct which provides:

"It is professional misconduct for a lawyer to:

"(a) violate or attempt to violate the Rules of Professional Conduct . . .;

"(b) commit a criminal act that reflects adversely on the lawyer's honesty, trustworthiness, or fitness as a lawyer in other respects;

"(c) engage in conduct involving dishonesty, fraud, deceit, or misrepresentation;

"(d) engage in conduct that is prejudicial to the administration of justice;

". . ."

We affirm the Findings and Conclusions of the Commission with regard to Count XIII.

*Crow Indian Tribe* — The Crow Indian Tribe filed an amicus brief in defense of Mr. Belue. The Tribe points out that Mr. Belue has earned the respect and admiration of Crow Indians because of his sensitivity to their concerns and his aggressive advocacy of their rights. The Tribe argues that this Court must keep in mind the alleged racial antagonism toward Indians in a polarized community from which these charges emerged. This leads the amicus to suggest that the charges against Mr. Belue do not justify the discipline recommended by the Commission. These contentions are not of significant help in deciding the issues presented to this Court. We point out that the evidence submitted in this case does not demonstrate the racial prejudice spoken of by the amicus. We also point out that the presence or absence of racial antagonism does not resolve the issues before us. Even if there were proof of racial antagonism in the record before us, this Court still would he required to determine whether or not the conduct of Mr. Belue violated the Rules of Professional Conduct.

We have carefully reviewed the extensive transcript of the hearing before the Commission to determine whether the facts warrant discipline of Mr. Belue. We found nothing to suggest that the findings and conclusions of the Commission were influenced by racial antagonism toward the Indian people. We have concluded there is clear, convincing, and unrebutted evidence to support both the findings and the conclusions of the Commission on Practice.

This Court is pleased to be advised that the Crow Indian Tribe both admires and respects Mr. Belue for his aggressive advocacy on behalf of Indian people. We commend Mr. Belue for his legal advocacy on behalf of the Indian people. However, we observe that this proceeding does not arise from his actions in engaging in such aggressive advocacy for Indian people. The proceeding arises from Mr. Belue's failure to comply with the rules of conduct which apply to all attorneys.

While Mr. Belue has earned the respect of his clients as an aggressive advocate, he has failed to earn the respect of this Court because of his inability to comply with the Rules of Professional Conduct which apply to him and all other advocates, regardless of the race, color, or creed of their clients. The contentions on the part of the Crow Indian Tribe and of Mr. Belue only distract from the critical issues framed by the complaint against Mr. Belue and the factual determinations and conclusions by the Commission. This Court has unanimously concluded that the Commission on Practice is correct

in its analysis of the improper and unethical conduct on the part of Mr. Belue.

In his rebuttal brief Mr. Belue argues that the charges against him arose out of a "vigilante" committee. He argues that the violations arose from his abrasive personality and that there is no personality requirement in the standards for lawyer conduct. Unfortunately Mr. Belue has failed to absorb the significance of the serious charges against him as well as the significance of the conclusions of the Commission. The Commission consists of both lawyers and non-lawyers who unanimously concluded that Mr. Belue's conduct was grossly improper and required both public censure and three months suspension from practice. The Court emphasizes to Mr. Belue that many lawyers in Montana aggressively represent Indians and other minority groups without violating the Rules of Professional Conduct. Mr. Belue's representation of Indian clients is *not* a justification for his improper conduct.

The Supreme Court of the State of Montana unanimously concludes as follows:

1. That Mr. Belue shall he suspended from the practice of law for a period of three months.

2. That Mr. Belue shall be publicly censured before this Court.

3. That Mr. Belue shall pay all costs of the proceedings before the Commission on Practice as a condition precedent to his reinstatement to the practice of law.

IN ORDER TO CARRY OUT THE FOREGOING, THE COURT ORDERS:

1. That Mr. Belue shall appear before this Court in Helena, Montana, for the administration of his public censure on Wednesday, September 7, 1988, at 9:00 a.m.

2. That Mr. Belue's suspension from the practice of law as an attorney and counselor in the State of Montana, including all tribunals and other bodies of the State, shall commence on September 7, 1988, and shall continue through December 7, 1988.

3. That Mr. Belue is given the period of time from the date of this order to the date of public censure and suspension in which to adequately prepare his practice and his clients for his suspension from practice, pursuant to Rule 21, Supreme Court of the State of Montana, Rules for Lawyer Disciplinary Enforcement.

4. That Mr. Belue is specifically advised that he is hereby prohibited from practicing as an attorney and counselor at law in any man-

ner in the State of Montana during the above described period from September 7, 1988, to December 7, 1988.

5. The Secretary of the Commission on Practice shall furnish this Court and Mr. Belue an appropriate statement of Commission costs.

6. When Mr. Belue has completed the period of suspension from practice on December 7, 1988, he shall file with this Court proof of payment of all costs of the proceeding before the Commission on Practice, and also an affidavit alleging that he has fully complied with all of the requirements of the suspension order, and shall also serve the same upon the secretary of the Commission on Practice, in accordance with Rule 20, Rules for Lawyer Disciplinary Enforcement. In order that there may be no misunderstanding, Mr. Belue shall personally deliver copies of such papers to the Chief Justice or Acting Chief Justice of this Court prior to any resuming of practice.

7. Copies of this opinion and order shall be mailed to Mr. Belue, Gregory O. Morgan, Robert C. Smith as special prosecutor, the chairman of the Commission on Practice, George Bousilman, Executive Director of the State Bar of Montana, Charles Cervantes, Counsel for the Crow Tribe, to each of the District Judges of the State of Montana, and to each of the United States District Judges for the District of Montana.

DATED this 21st day of June, 1988.

s/J.A. Turnage, Chief Justice
s/John Conway Harrison, Justice
s/John C. Sheehy, Justice
s/Fred J. Weber, Justice
s/William E. Hunt, Sr., Justice
s/L.C. Gulbrandson, Justice
s/R.C. McDonough, Justice